## Ex. rel. HENRY H. WALSH *v.* REUBEN W. KNICKERBOCKER.

In order that no inconvenience may result to the public service from the taking effect of this Constitution, no officer shall be superceded thereby; but the laws of this State relative to the duties of the several officers, executive, judicial and military, except those made void by military authority, and by the ordinance of emancipation, shall remain in full force, though the same be contrary to this Constitution; and the several duties shall be performed by the respective officers of the State, according to the existing laws, until the organization of the Goverment under this Constitution, and the entering into office of the new officers to be appointed under said Government, and no longer.

The District Attorneys shall be elected by the qualified voters of their respective districts, for a term of four years. Constitution of 1864.

APPEAL from the Fifth Judicial District Court for the Parish of East Baton Rouge, *Posey,* J.

*Dunn & Herron, for relator and appellant.*—The respondent and appellee, R. W. Knickerbocker, was appointed District Attorney of the Fifth Judicial District of Louisiana, on the 12th of April, 1864, during the recess of the Senate, by Governor Hahn. This recess nomination was never confirmed by the Senate, which met on the 4th of October following.

The relator, H. H. Walsh, was appointed and duly commissioned District Attorney of the Fifth Judicial District of Louisiana, by the present Governor, J. M. Wells, on the 27th day of April, 1865. He took the oath of office, as required by the Constitution, on the 1st of May, 1865. R. W. Knickerbocker having refused to vacate the office and to deliver the indictments, books, keys, etc., appertaining to it, to the relator, the latter sued out a mandamus to compel him so to do; and, from the judgment of the Court refusing the mandamus, relator has appealed.

The above statement of facts are not disputed, and the only question raised by the pleadings are, first: Had the term of office of Knickerbocker expired when Governor Wells appointed Walsh to succeed him; for, if it had, then it was not only the right, but the duty of the Executive, to fill the vacancy; second: Was there any constitutional appointment made, or officer vested with constitutional authority, until the adoption of the Constitution of 1864?

Knickerbocker claims the appointment made by Hahn, under the Constitution of 1852, to fill the vacancy occasioned by the death of J. D. Stuart, elected under that Constitution.

Article 48, Constitution 1852, provides that the Governor shall have power to fill vacancies that may happen during the recess of the Senate by granting commissions, which shall expire at the end of the next session. Knickerbocker's appointment was made during the recess of the

Senate; and, at the next session, which took place in the month of October following his apointment, no confirmation was made of the appointment, as will be shown by reference to the journals of the Senate; consequently, the commission of Knickerbocker expired at that session, and is not pretended, as shown by the record.

But, again, the Constitution of 1864 superceded and abrogated the Constitution of 1852, and, consequently, all powers of Government under the old Constitution ceased, except so far as they were maintained by the new one.

No one had such a vested right to office as to resist the necessary consequence of the entire abrogation by the people of the Constitution, under the authority of which he holds it. See *Segur* v. *Crenshaw*, 8 An. p. 401. The officers of the Constitution of 1852 are not the officers of the Constitution of 1864; and, as long as the former continue in office, the present Government will continue and remain pro tanto unorganized.

Governer Wells succeeded Governor Hahn, and became the constitutional Governor of Louisiana, by Article 47 of the present Constitution. He was the creature of a distinct and different creator; he exercises his constitutional rights in their entirety.

The Governor elected in 1864, February 22d, was vested with no legal and constitutional rights or power prior to the ratification of the Constitution of 1864. The order of General Banks for the election, was unauthorized by the Constitution of 1852. Under that Constitution, there was no vacancy in the office of Governor; and no power, beyond that of a temporary nature, could be conferred by an election under an order emanating from a military commander, consequently, all persons appointed to office by Governor Hahn, prior to the ratification of the Constitution of 1864, held their offices from a source without constitutional power or qualification to confer any beyond temporary appointments. These temporary officers are only "tenants at will," to be removed as soon as the particular department to which they owe their birth, and under whose control they are, is ready to exercise its constitutional functions. To continue them longer would be to prolong, without cause, the temporary Government.

Article 90, Constitution 1852, requires that all officers, before entering upon the duties of their office, shall take the following oath:

"I do solemnly swear or affirm that I will support the Constitution of the United States and of this State."

What constitution? The Constitution of 1852. Is the respondent an officer of the State? Certainly not. He is an officer of the State or Government of 1852, as he claims from his apointment, and not of the Government of 1864; and, as long as he continues under his original appointment, he is not a qualified officer of the present Government or Constitution of 1864.

Article 154, Constitution 1864, recognized the State officers elected in

February, 1864. It provides the terms of office of the State officers elected on the 22d February, 1864, shall expire on the installation of their successors, as herein provided for, etc. Knickerbocker having been appointed by Governor Hahn, in April, 1864, prior to his recognition as Governor by the Constitution of 1864, held his office by temporary tenure. Governor Wells appointed Walsh after the adoption of the Constitution of 1864. This appointment is the first legal filling of the vacancy existing in the office since the death of the former incumbent, J. D. Stuart, elected under the Constitution of 1852.

It is submitted that, even if Governor Hahn's power to appoint under the Constitution of 1852 were unquestionable, the adoption of the Constitution of 1864, and the entering into office of the new Governer under it, by Article 47, new Constitution, superceded and abrogated appointments made by Hahn prior to the adoption of the Constitution.

I refrain from arguing the case further, simply referring the Court to the very able and lucid argument of L. J. Segur, in the case of *Segur* v. *Crenshaw*, 8 An. as well as the decision of the Court in that case.

*J. Q. Fuqua, for defendant.*—R. W. Knickerbocker was appointed to fill a vacancy, or supposed vacancy, in the office of District Attorney for the Fifth Judicial District, occasioned by the failure of the people, or that portion of them within the Federal lines, to elect a District Attorney in November, 1863 ; he was appointed to fill that unexpired term which extended to the next regular election, viz : November, 1867.

But it is contended that circumstances have occurred since his appointment which have vacated his office, and rendered a new appointment necessary. What are these circumstances ?

First, it is said that, as the order of General Banks directing an election to be held for State officers in February, 1864, was not sustained by the Constitution of 1852, or any law made thereunder, the appointments made by Governor Hahn were not made under the Constitution, and are not to be governed by it. That the election of Governor Hahn was effected only by the exercise of military power, I am ready to admit, but after his election; I know not by what law he was to be governed if not by the Constitution of 1852, and the laws thereunder.

Even if Louisiana is to be regarded as, at that time, a conquered territory, so much of the former law would remain in force as was not abolished by the conqueror.

The appointment, then, was made under the Constitution of 1852, and must be governed by it, as to duties and duration, except so far as modified by the Constitution of 1864. Let us see, then, what are the provisions of the Constitution of 1852, and whether this appointment, under that Constitution, required to be confirmed by the Senate.

Article 48, of that instrument, is as follows :

" The Governor shall have power to fill vacancies that may happen in

the recess of the Senate by granting commissions, which shall expire at the end of the next session, unless otherwise provided for in this Constitution." If this language is not wholly unmeaning, and mere surplusage, it must mean that there are cases where the concurrence of the Senate in an appointment to office is not necessary, and that these cases are otherwise provided for in the Constitution itself. These cases are "otherwise provided for" in two ways :

1. By express constitutional provision, as in case of Sheriff and Coroner, who, in case of vacancy, are to be appointed by the Governor alone, and not by the Governor, by and with the advice and consent of the Senate, and who, it is expressly declared, "shall continue in office until their successors in office are elected and qualified." Article 80.

2. The Legislature is authorized to provide the mode of filling vacancies in certain offices, among others, that of District Attorney. Article 84.

Under the authority here conferred, the Legislature might have devised any mode they thought proper ; they might have provided for the filling of these vacancies by the District Judge, by the Clerks of the Courts, or by the members of the Bar. Either of these modes would, under the power granted, be perfectly constitutional, and surely, neither of them would require confirmation by the Senate.

The Legislature has, with reference to the office in question, acted upon the authority given and provided by the act of 1855, that a vacancy in the office of District Attorney shall be filled by the Governor. If they had intended the Senate should concur in this appointment, surely they would have said so, and as they have not done this, surely the Courts are not called on to annex to continuance in the office a condition not required by the Legislature.

The legislation of our State abounds with instances of offices, neither the appointment to fill vacancies in, nor the original appointment to, which require confirmation by the Senate. See Revised Statutes, p. 321, § 6; p. 425, § 3; p. 426, § 4; p. 454, § 1.

It will be seen, also, that whenever the Legislature have thought proper to require confirmation by the Senate, they have said so in express terms. See Revised Statutes, p. 72, § 1; p. 179, § 2; p. 240, § 1; p. 248, § 2.

Thus, it will be seen, that, in conformity with Article 47, the Legislature has established several modes of appointment to office. In some cases, the appointment may be made by the District Judge, as in the case of vacancy in the offices of Clerk or Recorder ; in some, by the Recorder, as in the case of vacany in the office of Assessor, but more generally by the Governor. That there are two classes of appointments by the Governor, one of which requires confirmation by the Senate, and the other does not ; that the office of District Attorney belongs to the latter class, and does not come within the meaning of the first clause of Article 48, for the reason that, in accordance with the provisions of the latter clause, it has been "otherwise provided for."

But, it is said, with singular inconsistency, that, while the Constitution of 1864 imparted new life to Governor Wells, it killed everybody else. In this respect it seemed to have worked like some poisons, which, though fatal to some animals, are highly beneficial to others.

I know of no provision in that Constitution, nor has the appellant cited any, which draws any distinction between the office of Governor and any other office. So far as I have been able to understand, a document so remarkable in its history, and so wise in its provisions, all the officers in office at the time of its adoption, are placed upon the same footing ; and, if a vacancy was created in the office of District Attorney, by the adoption or ratification of that instrument, a vacancy was at the same time created in the office of Governor; but this, I imagine, would be proving too much for the appellant.

The appellant has appealed to the Constitution of 1864, which he claims as the law which is to decide this case. Although I do not concur in this opinion, and do not believe that it is the organic law of the State, or that the circumstances attending its pretended adoption and ratification were such as to give it any claim to to be regarded as the will of the people of Louisiana, I am willing, for the purposes of this argument, to consider it as the law of the land, and to be governed by its provisions.

Did the Constitution of 1864, then, vacate the office of District Attorney in the Fifth Judicial District ?

Article 150 of that instrument seems directly to negative such a proposition. It provides, in express terms, that no. offices shall be superceded until the organization of the new Government, and the entering into office of the new officers "to be appointed under said government, and no longer."

Has the new Government been organized, and have the new officers appointed under it entered upon their duties ? If so, when did all this occur ? There has been no election for Governor, Secretary of State, Auditor, etc., since the 22d February, 1864. The framers of the Constitution seem to have anticipated that, in consequence of the war, the complete organization of the Government under it might be indefinitely postponed, and they sought to provide for this state of things, by directing that those in office should hold over until an election could be held in all the parishes of the State, or until the second Monday of January, 1868. Article 154. This appears, to me, to settle the whole matter. The case of *Segur* v. *Crenshaw*, cited by appellant, does not apply to this state of facts; in that case, the Government had been fully organized, under the new Constitution, and Segur was the appointee of the new Governor.

It has not been pretended that the Governor has the power to remove any officer at pleasure, and it is therefore unnecessary to discuss that point.

LABAUVE, J. This is a contest between the parties, for the office of District Attorney of the said District, and the questions involved in this case are purely of law.

The defendant, Knickerbocker, who is in possession of the office, was appointed by Governor Hahn, on the 12th April, 1864; his commission does not state that the appointment was made with and by the advice and consent of the Senate.

The relator was appointed to the same office by Governor Wells on the 7th April, 1865; his commission does not purport that he was appointed with and by the advice and consent of the Senate.

The appointment of Knickerbocker was made under the Constitution of 1852. The Article 47 of that instrument, alluding to the Governor, reads thus:

He shall nominate, and by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution, and whose appointments are not herein otherwise provided for. Provided, however, that the Legislature shall have a right to prescribe the mode of appointment to all other offices established by law.

Art. 48. The Governor shall have power to fill vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of the next session, unless otherwise provided for in this Constitution. * * * Arts. 74, 149. District Attorneys were to hold their offices for four years, and the regular term was to commence at a new election on the first Monday of November, 1855.

In conformity with this Constitution, the Legislature enacted (Revised Statutes, p. 182, § 1): That there shall be elected, on the first Monday of November, 1855, and every four years thereafter, in and for each Judicial District in this State, by the qualified voters thereof, one District Attorney, for the term of four years.

Section 3, same book and page: In case any vacancy should occur by death, resignation, refusal to qualify, or otherwise, the Governor shall fill such vacancy.

T. D. Stuart, the former incumbent, was elected on first Monday of November, 1859, and having died, left a vacancy in the office of District Attorney; and there having been no election held on the first Monday of November, 1863, the office remained vacant and the vacancy was filled by Governor Hahn, without the advice and consent of the Senate, on the 12th April, 1864, in appointing the defendant, Reuben Knickerbocker.

In the interval between the appointment of Knickerbocker, on the 12th April, 1864, and that of the relator, Walsh, on the 7th April, 1865, a session of the Senate intervened, and it is now contended that the commission issued by Governor Hahn to Knickerbocker expired at the end of the next following session of the Senate, and that the office became vacant, and was so at the time when the relator was appointed. Here the question arises, whether the appointment of Knickerbocker was one contem-

plated by the sections 47 and 48 of the Constitution, and whether the Legislature, in conferring the right of appointment, in cases of vacancy, upon the Governor, intended that the said Articles 47 and 48 of the Constitution should apply. We are of opinion that these Articles contemplate appointments made in the first instance by the Governor with and by the advice and consent of the Senate, and have in view vacancies occurring in these offices; and we therefore believe that they had no application to the appointment in question, and that the Governor, in filling said vacancy, acted under the Act of the Legislature, and that, in that case, the action of the Senate was not required: the legislative Act says: *The Governor shall fill such vacancy.* The constitutional words: *by and with the advice and consent of the Senate,* are not used by the legislator, and we cannot add the expression to the law.

The appointment by Governor Hahn was final and absolute, and the appointee was to hold the office until superceded by a successor elected by the people. Constitution of 1864, Arts. 150, 83.

It is therefore ordered and decreed, that the judgment appealed from be affirmed, the appellant to pay costs of appeal.